**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  19-cv-2952

APS BIOGROUP, INC. and
LA BELLE ASSOCIATES, INC.,

      Plaintiffs,

v.

STERLING TECHNOLOGY, INC.,

      Defendant.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Plaintiffs APS BioGroup, Inc. ("APS BioGroup") and La Belle Associates, Inc. ("La Belle"), by their undersigned counsel, for their Complaint against Defendant Sterling Technology, Inc. ("Sterling"), state and allege as follows:

**INTRODUCTION**

1.    Plaintiffs APS BioGroup and La Belle (collectively, "Plaintiffs"), and Defendant Sterling are competitors. They manufacture and sell bulk bovine colostrum powder. Purchasers of bulk powder incorporate the powder into final products for human and animal consumption. Bovine colostrum has a variety of health benefits due to the presence in colostrum of antibodies known as immunoglobulins, but immunoglobulin content of colostrum varies widely. In order to eliminate variability and provide a more consistent product, manufacturers of bulk bovine colostrum products blend pure colostrum with other immunoglobulin-containing dairy proteins, such as whey protein concentrate ("WPC") powder. However, Sterling has been falsely advertising certain of its blended bulk colostrum products as "pure," "100%," or "99.5%" bovine

colostrum, despite the fact that such products consist of up to as much as 80% WPC powder.  In competing with its misleading products against Plaintiffs, Sterling has also falsely represented to customers that Plaintiffs have insufficient supply to fulfill customer orders.  Sterling's improper conduct has diverted customers from Plaintiffs, caused marketplace confusion, and irreparably harmed Plaintiffs' goodwill.

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiff APS BioGroup is a corporation organized and existing under the laws of the State of Colorado, with offices in Boulder, Colorado, and a manufacturing facility in Phoenix, Arizona.

3.     Plaintiff La Belle, Inc. is a corporation organized and existing under the laws of the State of Washington, with offices in Boulder, Colorado, and manufacturing operations in both Phoenix, Arizona, and Ripon, California.

4.     Defendant Sterling is a corporation organized and existing under the laws of the State of South Dakota, with a principal place of business at 133 32nd Ave S, Brookings, South Dakota.

5.     This is a civil action with federal law claims under 15 U.S.C. § 1125(a) for false advertising and unfair competition; and with related state law claims under Colo. Rev. Stat. § 6-1-105 and the common law.

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.  The Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) on the basis of diversity citizenship and because the amount in controversy

exceeds the required amount.  This Court further has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

7.    This Court has personal jurisdiction over Sterling.  Sterling has purposefully directed its activities at residents of this forum.  APS BioGroup, a Colorado corporation, has been the target of Sterling's tortious conduct.  Sterling intentionally aimed its activities at this District because Sterling, in order to divert customers from APS BioGroup, falsely advertised its products and made misleading statements regarding APS BioGroup's supply capabilities.  APS BioGroup is a resident of this District and Sterling knew that the injury caused by its false advertising and deceptive practices would be felt in this District.  Moreover, Sterling's false advertising and deceptive practices have also been directed to this forum because customers and potential customers of bulk bovine colostrum reside in this District.  Sterling's false statements about its products were made to and directed to residents of this District.  Sterling has sold products in this District as a result of its false statements.  Sterling has purposefully availed itself of the privilege of conducting activities within this District, and Plaintiffs' claims arise out of and relate to these activities.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the event giving rise to the claims occurred in this District.

## THE MARKET FOR BULK BOVINE COLOSTRUM POWDER

9.    The parties are competitors in the market for supplying bulk bovine colostrum powder products as raw material.  Purchasers incorporate the bovine colostrum powder into a variety of products for human and animal consumption.

10.    Bovine colostrum has a variety of health benefits for humans and animals.

11.     Colostrum is the first form of liquid produced by the mammary glands of mammals. Mammals produce colostrum immediately after delivery of a newborn (and colostrum can even be produced just before delivery).  Mammals produce colostrum for several days before beginning production of milk.

12.     Colostrum provides newborns with vital nutrients and antibodies known as immunoglobulins.

13.     For cows, the level of immunoglobulins in colostrum may be 100 times that of cow's milk, although the exact level of immunoglobulins in colostrum varies.

14.     Humans have consumed cow's milk for its health benefits for millennia.  More recently, there has been interest in the potential health benefits of human consumption of cow (or "bovine") colostrum.

15.     Studies have shown that bovine colostrum is beneficial to humans for a variety of purposes such as treating diarrhea, preventing the flu, and increasing athletic performance.

16.     Bovine colostrum is also beneficial for use in veterinary medicine for conveying passive immunity and treating and preventing disease in animals.

17.     The immune boosting power of bovine colostrum is due largely to the presence of immunoglobulins.

18.     Due to the health benefits of bovine colostrum, demand exists for colostrum-containing products for both human and animal consumption.  This demand is due, in large part, to the substantial investment made by Plaintiffs and their affiliate, PanTheryx, Inc. ("PanTheryx"), in educating consumers on the benefits of colostrum.

19.     The most important factor considered by purchasers of powdered bovine colostrum is the amount of a particular immunoglobulin, known as immunoglobulin-G ("IgG"). However, due to natural variability of the composition of colostrum, the IgG profile of pure colostrum powder varies significantly.

20.     Therefore, in order to provide bulk products with consistent IgG profiles, manufactures of bulk bovine colostrum products typically blend bovine colostrum with other immunoglobulin containing dairy proteins, such as high-immunoglobulin WPC powder (which is produced from ordinary milk, among other sources).

21.     The blending of dairy proteins with colostrum also significantly reduces the price of the final product. Colostrum is only produced by cows for several days (immediately after giving birth) and accordingly has high productions costs compared to milk-based products.

## PLAINTIFFS' BUSINESS

22.     Plaintiffs APS BioGroup and La Belle are affiliated companies. Both are owned by PanTheryx Colostrum Holdings, Inc., another affiliate of PanTheryx. APS BioGroup manufactures its bulk colostrum products in Arizona. La Belle manufactures its bulk colostrum products in Arizona and California.

23.     PanTheryx is a leading producer of colostrum-based consumer products, and has been a trailblazer of research into the health benefits of bovine colostrum. PanTheryx is based on Boulder, Colorado.

24.     APS BioGroup and La Belle supply PanTheryx with the bulk colostrum it needs to manufacture is consumer products.

25.      APS BioGroup and La Belle also supply bulk colostrum to un-affiliated companies that make consumer products.   These sales occur across state lines and internationally.

26.      APS BioGroup and La Belle have goodwill associated with their bulk colostrum products.

27.      Some of Plaintiffs' colostrum powder is blended with other dairy powders, most commonly high-immunoglobulin WPC powder.  Plaintiffs label their products with ingredients and advise their customers when their products are not pure colostrum.

**STERLING'S FALSE ADVERTISING AND COMMERCIAL DISPARAGMENT**

28.      Defendant Sterling manufactures bulk bovine colostrum powder products in South Dakota.  Sterling competes with both APS BioGroup and La Belle.  Sterling sells its products across the United States, including Colorado, and internationally to purchases that use the bulk powder to make consumer products.

29.      Sterling advertises and describes certain of its bulk bovine colostrum powder products as "pure" or 100% or 99.5% bovine colostrum.

30.      For example, Sterling's product labels state that Sterling's products are "pure" bovine colostrum and do not disclose any ingredients other than bovine colostrum.

31.      As another example, Sterling sends "Ingredient Declarations" in the form of "To Whom It May Concern" letters from Sterling's Quality Assurance Manager Clay Scofield.  These letters state that the ingredients in Sterling's 2060 products to be 100% bovine colostrum (Sterling's 2060 standard product) or 99.5% bovine colostrum (Sterling's 2060 instant product).

32.      As another example, Sterling makes additional statements on its website regarding the purity and quality of its colostrum products.  For example, regarding its ColostruMune product,

Sterling states on its website that "[i]n every step of our careful process, we guarantee the ***purest***, highest quality products available on today's market." (emphasis added). More generally, Sterling touts itself as "the global leader in colostrum quality, consistency and innovation."

33.     Sterling's website goes on to say "The company name 'Sterling' was chosen as a reflection of our commitment to provide products of sterling quality and since colostrum is the only nutritional supplement we manufacture, we have perfected our processing and quality control methods to yield a ***pure*** and potent product. We are dedicated to the use of science and research to produce innovative products to keep our customers happy and healthy and will continue to supply companies with superior products to fit their needs." (emphasis added).

34.     Sterling's website also emphasizes its corporate value of "integrity" on every page.

35.     Yet, despite professing its integrity, Sterling's statements concerning the purity and characteristics of certain of these "pure" colostrum powder products has been and remains false.

36.     In November 2018, principals of PanTheryx confronted principals of Sterling concerning their concerns about Sterling's misleading descriptions and labeling of its pure colostrum products. Sterling's principals confirmed that its "pure" colostrum products were actually blended products. They stated, however, that they would modify their labeling and otherwise stop the false advertising. Unfortunately, Sterling did not stop.

37.     Recent analysis of samples of Sterling bulk "pure" colostrum products has shown that Sterling's products consist of up to 80% high-immunoglobulin WPC powder, despite being advertised as "pure" bovine colostrum.

38.     Indeed, Sterling's "pure" bovine colostrum products look, smell, and taste like WPC powder, not colostrum powder.  Sterling's "pure" colostrum products are grey in appearance, not creamy yellow like a pure colostrum powder; Sterling's "pure" colostrum products have a bitter taste, not the sweet milk-like flavor of pure colostrum powder; Sterling's "pure" colostrum products have a metallic aroma, not a sweet milk-like aroma of pure colostrum powder.

39.     Sterling's price for its "pure" colostrum powder is much lower than the costs of production of a "pure" powder.

40.     By advertising its products as "pure," "100%", or "99.5%" bovine colostrum, Sterling has caused Plaintiffs to lose customers and sales.  By blending its products, Sterling is able to divert sales away from Plaintiffs' products by offering falsely labelled blended products for a less expensive price.  Faced with a choice between products with similar IgG profiles, customers naturally choose the less expensive product advertised as "pure" colostrum rather than the product advertised as blended.

41.     Moreover, Sterling's sales of mislabeled and falsely advertised "pure" colostrum products has created confusion in the marketplace and damaged Plaintiffs' goodwill.  Customers have been misled into believing that Plaintiffs' competitor Sterling is able to supply "pure" bulk colostrum products with lower prices and similar IgG profiles as Plaintiffs' blended products.

42.     To make matters worse, Sterling's agent, Ben Mei, has told customers in China that Plaintiffs' liquid colostrum supply network was less extensive than Sterling's and that as a result Plaintiffs are unable to fulfill customer orders.

43.     This is false— Plaintiffs' liquid colostrum supply network is significantly larger than Sterling's.

## COUNT I

## VIOLATION OF THE LANHAM ACT—FALSE ADVERTISING (15 U.S.C. § 1125(a))

44.     Plaintiffs re-allege and incorporates by reference all of the allegations set forth in the above paragraphs as if fully set forth herein.

45.     Sterling's past and/or ongoing actions constitute unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

46.     Sterling's statements that its bulk colostrum products are "pure" or "100%" bovine colostrum or "99.5%" bovine colostrum are false or misleading statements of fact in a commercial advertisement about the nature, quality, and characteristics of its bulk colostrum products so labeled.

47.     These statements convey the false impression that Sterling's products are not blended with other dairy proteins. Yet, laboratory analysis has shown that Sterling's products contain significant amounts of high-immunoglobulin WPC powder.

48.     Sterling's statements have the tendency to deceive a substantial segment of the purchasers of bulk bovine colostrum products.  On information and belief, Sterling's statements have actually misled or deceived purchasers of Sterling's bulk products.

49.     Purchasing decisions of consumers are influenced by the purity of bovine colostrum and the amount of blending with other dairy proteins.  If a consumer can obtain a pure bovine colostrum product with a lower price and the same IgG profile as a blended product, the consumer is likely to prefer the pure product.  Likewise, if a customer understands Sterling's "pure"

colostrum product is significantly less expense than competitors' products with a similar IgG profile, the customer will purchase the less expensive product.

50.     Sterling caused its false statements regarding the purity of its bovine colostrum products to enter interstate commerce.  Sterling's products are sold and advertised across state lines.  Plaintiffs' products are also sold and advertised across state lines, and Sterling's false advertising has had, and continues to have, a substantial effect on Plaintiffs' business.

51.     Plaintiffs have been injured, and are likely to continue to be injured, as a result of Sterling's false statements.  Sterling's false advertising has diverted sales from Plaintiffs.

52.     Sterling's false advertising is willful.  Sterling knows that its bulk colostrum products are blended with significant amounts of WPC—Sterling manufactures its own products and has acknowledged the blending of its products to PanTheryx.  Pursuant to 15 U.S.C. § 1117 Plaintiffs' are entitled to Sterling's profits, actual damages, costs, and attorney's fees.

53.     Plaintiffs' remedies at law are inadequate to compensate for their harm. Sterling's actions have misled and will continue to mislead purchasers, and will cause irreparable harm to Plaintiffs and their good will.  Sterling's acts will continue unless enjoined by this Court.

## COUNT II

## COLORADO DECEPTIVE TRADE PRACTICES

54.     Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the above paragraphs as if fully set forth herein.

55.     Sterling's statements that its bovine colostrum products are "pure" or "100%" bovine colostrum or "99.5%" bovine colostrum constitute a deceptive trade practice under Colorado state law.   The statements are a false representation as to the characteristics and

ingredients of Sterling's goods.  These statements are made on Sterling's product labels, which state that Sterling's products are "pure" and do not disclose any ingredients other than bovine colostrum.  These statements are also made on "To Whom It May Concern" letters from Sterling's Quality Assurance Manager Clay Scofield, which claim that Sterling's 2060 products are 100% (standard) or 99.5% (instant) bovine colostrum.  Such a letter was dated February 8, 2018, but on information and belief similar letters have been sent to Sterling's customers for years.  Sterling makes additional statements on its website regarding the purity and quality of its colostrum products.  Its website touts its products as the "purest" on the market, and claims that its processing method yield a "pure" product.

56.     Sterling knowingly made these false representations—Sterling knows, and has acknowledged, that its "pure" colostrum products are not pure bovine colostrum but instead are blended with other dairy proteins such as WPC.

57.     Sterling's statements that APS BioGroup and/or La Belle are unable to fulfill customer order due to commitments to PanTheryx are a false and misleading representation of fact.  APS BioGroup and La Belle are able to fulfill customer orders, and Sterling's statements to the contrary are disparagement of APS BioGroup and/or La Bell's business.

58.     Sterling's statements were made in the course of Sterling's business—they were made to customers, or potential customers, for bovine colostrum products.

59.     Sterling's statements significantly impacts the public.  The members of the public that purchase Sterling's good are deceived.  Moreover, the general public is also affected and deceived by Sterling's statements.  Purchasers incorporate Sterling's colostrum powder into final products marketed to the general public.  Due to Sterling's deceptive and false statements

regarding the purity of Sterling's bulk colostrum powder, the final products made with this powder are mislabeled to reflect a greater colostrum content than they actually have.  These mislabeled final products are then sold to the general public, who are likewise deceived as to the colostrum content of the products.

60.     Sterling's statements have caused injury to Plaintiffs.  Customers have been diverted away from Plaintiffs to Sterling and Plaintiffs have lost sales to Sterling.  These customers prefer to purchase pure colostrum powder if its price and IgG profile are similar to that of a blended colostrum product.

61.     Pursuant to Colo. Stat. § 6-1-113, Plaintiffs are entitled to treble damages, and attorney's fees.

62.     Plaintiffs' remedies at law are inadequate to compensate for their harm. Sterling's actions have misled and will continue to mislead purchasers, and will cause irreparable harm to Plaintiffs and their good will.  Sterling's acts will continue unless enjoined by this Court.

## COUNT III

## COMMON LAW UNFAIR COMPETITION

63.     Plaintiffs re-allege and incorporate by reference all of the allegations set forth in the above paragraphs as if fully set forth herein.

64.     In connection with its marketing of bulk bovine colostrum powder, Sterling has represented and continues to represent on its labels and in certifications to customers that its own bulk bovine colostrum powder is "pure" or "100%" bovine colostrum or "99.5%" bovine colostrum.

65.     These representations are likely to deceive or mislead prospective purchasers of bulk bovine colostrum because Sterling's products are not pure, 100%, or 99.5% bovine colostrum, but instead contain significant amounts of high-immunoglobulin WPC powder.

66.     Sterling's representations have been to the commercial detriment of Plaintiffs. Sterling's representations have diverted customers, and caused Plaintiffs to lose profits.

67.     Plaintiffs' remedies at law are inadequate to compensate for their harm. Sterling's actions have misled and will continue to mislead purchasers, and will cause irreparable harm to Plaintiffs and their good will.  Sterling's acts will continue unless enjoined by this Court.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for a judgment in this action as follows:

A.     Permanently enjoining and restraining Defendant, its officers, agents, servants, employees, licensees, distributors, attorneys, corporate affiliates, successors and assigns, and/or all persons or entities acting in concert or participation with it, or any of them, from advertising, promoting, marketing, offering to sell or selling bovine colostrum products without accurately labelling or disclosing all ingredients;

B.     Permanently enjoining and restraining Defendant, its officers, agents, servants, employees, licensees, distributors, attorneys, corporate affiliates, successors and assigns, and/or all persons or entities acting in concert or participation with it, or any of them, from disparaging Plaintiffs' ability to supply bulk bovine colostrum products or fulfill orders for bulk bovine colostrum products;

C.      Directing Defendant to pay over to Plaintiffs its profits arising from the conduct complained of herein, pursuant to 15 U.S.C. § 1117 and to the extent allowed under Colo. Rev. Stat. § 6-1-113 and Colorado common law;

D.      Awarding Plaintiffs damages in an amount to be determined at trial;

E.      Awarding Plaintiffs their reasonable treble damages, attorneys' fees, taxable costs and disbursements of this action, to the extent allowed under 15 U.S.C. § 1117, Colo. Rev. Stat. § 6-1-113, and Colorado common law; and

F.      Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 16th day of October, 2019.

DORSEY & WHITNEY LLP

*s/ Gregory S. Tamkin*
Gregory S. Tamkin
1400 Wewatta Street, Suite 400
Denver, CO 80202
Tel.  (303) 629-3400
E-mail:  tamkin.greg@dorsey.com

Forrest Tahdooahnippah
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402
Tel.  (612) 340-2600
E-mail:  forrest@dorsey.com

***ATTORNEYS FOR PLAINTIFFS APS
BIOGROUP, INC. AND LA BELLE
ASSOCIATES, INC.***