IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:19-cv-02952-RM-MEH

APS BIOGROUP, INC., and
LA BELLE ASSOCIATES, INC.,

    Plaintiffs/Counter Defendants,

v.

STERLING TECHNOLOGY, INC.,

    Defendant/Counterclaimant,

and

STERLING TECHNOLOGY, INC.,

    Third-Party Plaintiff,

v.

PANTHERYX, INC.,

    Third-Party Defendant.

_____

**ORDER**
_____

    Several motions are pending in this case. United States Magistrate Judge Michael E. Hegarty has issued a recommendation (ECF No. 95) to deny Defendant's motion to dismiss for lack of personal jurisdiction (ECF No. 14) and to deny as moot Plaintiff's motion for leave to file a sur-reply (ECF No. 69). No party objected to the recommendation. As explained below, the Court accepts and adopts the recommendation, denies both these motions, and then turns to Plaintiff's motion for a preliminary injunction (ECF No. 24), which has been fully briefed (ECF

Nos. 33, 48, 66). Defendant has filed a related motion to strike certain testimony supporting the motion for a preliminary injunction (ECF No. 103), and that motion has been fully briefed as well (ECF Nos. 107, 108). The Court denies both these motions for the reasons below. Finally, Defendant has filed an unopposed motion to restrict an exhibit pertaining to the preliminary injunction motion (ECF No. 85), which the Court grants.

## I.      LEGAL STANDARDS

### A.      Magistrate Judge's Recommendation

"In the absence of a timely objection, the district court may review a magistrate judge's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.3d 1165, 1167 (10th Cir. 1991).

### B.      Personal Jurisdiction

Plaintiffs bear the burden of proving that the Court has personal jurisdiction over Defendant. *See Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). To defeat a motion to dismiss based on Fed. R. Civ. P. 12(b)(2), the plaintiff must first show that the defendant has "minimum contacts" with the forum state. *Id.* at 1066. For the purpose of establishing specific personal jurisdiction, the "minimum contacts" standard is met if the defendant has purposefully directed its activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *Id.* at 1068. If the defendant has sufficient "minimum contacts" with the forum state, the court then considers whether exercising jurisdiction comports with traditional notions of fair play and substantial justice. *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). A five-factor test is used to determine whether the exercise of jurisdiction is reasonable. *Id.* at 1249.

### C. Preliminary Injunction

The fundamental purpose of preliminary injunctive relief is to preserve the relative positions of the parties until a trial on the merits can be held. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). To obtain this extraordinary relief, a plaintiff must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotation omitted). The plaintiff's right to relief must be clear and unequivocal. *Schrier*, 427 F.3d at 1258. Moreover, this circuit has identified three types of injunctions that are specifically disfavored: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Id.* at 1258-59 (quotation omitted). To get a disfavored injunction, the moving party faces and even heavier burden of showing that the first and third factors above tilt in its favor. *Free the Nipple—Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019).

## II. BACKGROUND

Plaintiffs and Defendant are competing suppliers of bulk bovine colostrum powder, a substance known to provide health benefits to humans and animals. Bovine colostrum may be blended with other dairy proteins such as whey protein concentrate to improve the consistency and reduce the cost of bulk powder. Plaintiffs allege that Defendant sells bovine colostrum products that are not as pure as advertised, and they filed this lawsuit asserting claims for

violation of the Lanham Act, deceptive trade practices under Colorado law, and common law unfair competition.

Defendant moved to dismiss for lack of personal jurisdiction, arguing that it lacks minimum contacts with the state of Colorado. However, Defendant did not object to the magistrate judge's recommendation to deny its motion.

While the motion to dismiss was still pending, Plaintiffs filed their motion for a preliminary injunction. Plaintiffs contend Defendant sells blended colostrum products that are advertised as pure or nearly pure and is thereby harming the nascent market for these products. In support of their contention that Defendant's products are impure, Plaintiffs rely on a declaration and supplemental declaration by George Stagnitti, who is the president of both Plaintiffs. Mr. Stagnitti opines that Defendant blends its bovine colostrum with additional ingredients, such as whey protein concentrate, but fails to disclose this to its customers. Mr. Stagnitti states that he reached this conclusion based on his personal observation of the color, smell, texture, and taste of Defendant's products as well as in-house testing performed at Plaintiffs' lab.

After the magistrate judge entered a recommendation to deny the motion to dismiss and Defendant changed handling counsel, Defendant filed a motion to strike portions of Mr. Stagnitti's declarations, arguing that his testimony is inadmissible—whether construed as lay opinion or expert testimony. Defendant then filed its answer, asserting counterclaims against Plaintiffs and third-party claims against PanTheryx, Inc., an entity that previously tried to acquire Defendant and did acquire both Plaintiffs. Defendant alleges that Plaintiffs and PanTheryx have

"embarked on a calculated scheme to discredit [its] business and misappropriate its trade secrets."  (ECF No. 120-1 at ¶ 2.)

Meanwhile, discovery has proceeded in this case.  After the parties agreed to the appointment of a special master to investigate Defendant's manufacturing process, the magistrate judge appointed one last month.  (ECF No. 124.)  The investigation is anticipated to take no more than 45-60 days.

### III.    ANALYSIS

#### A.    Motion to Dismiss for Lack of Personal Jurisdiction

In the recommendation, the magistrate judge determined Plaintiffs had met the requirements for establishing specific personal jurisdiction by showing that Defendant purposefully availed itself of the privilege of conducting activities in Colorado and that the lawsuit resulted from alleged injuries that arose out of those activities.  (*See* ECF No. 95 at 12-16.)  With respect to the first requirement, the magistrate judge further determined that Plaintiffs had demonstrate purposeful availment through the "stream of commerce" legal framework.  (*Id.* at 17-20.)  The magistrate judge then weighed the five factors pertaining to notions of fair play and substantial justice and found that they tipped in Plaintiffs' favor.  (*Id.* at 21-24.)  Finally, because the magistrate judge recommended denying Defendant's motion, he also recommended denying as moot Plaintiffs' motion for leave to file a sur-reply.  Again, no party objected to the recommendation.

A defect in the Court's jurisdiction over a party is a personal defense which may be waived.  *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986).  "Once waived, lack of personal jurisdiction may not be raised by the court."  *Id.*  Assuming Defendant

did not waive this issue by failing to object the recommendation, the Court finds the magistrate judge's analysis was thorough and sound and discerns no clear error on the face of the record. Accordingly, the Court accepts and adopts the recommendation, which is incorporated herein by reference, *see* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b), denies Defendant's motion to dismiss, and denies as moot Plaintiffs' motion for leave to file a sur-reply.

      **B.**      **Motion for Preliminary Injunction and Motion to Strike**

Having resolved the threshold jurisdictional issue, the Court now addresses Plaintiffs' motion for injunctive relief. The parties dispute whether the injunction Plaintiffs seek—an order requiring Defendant to accurately disclose the ingredients in its bulk bovine colostrum products—is a disfavored injunction because it would alter the status quo. Even if it is not, the Court finds that Plaintiffs have not established a clear and unequivocal right to relief.

In making this determination, the Court declines to strike Mr. Stagnitti's testimony. In its motion to strike, Defendant cites caselaw applying Rules 701 and 702, arguing that portions of Mr. Stagnitti's testimony are barred either as lay opinion or expert testimony. However, the Federal Rules of Evidence do not apply in the context of a preliminary injunction motion. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). In ruling on a motion for preliminary injunctive relief, there is no jury for whom the Court must serve as gatekeeper, and the Court is merely making a preliminary assessment of Plaintiffs' claims, not rendering a decision on the merits. Here, the Court concludes Plaintiffs are not entitled to injunctive relief even if Mr. Stagnitti's declarations are considered. Accordingly, the Court denies Defendant's motion to strike.

Plaintiffs' claims hinge on their contention that Defendant misrepresents the purity of its products.  To support this contention, Plaintiffs' rely exclusively on Mr. Stagnitti's declarations.  Plaintiffs do not argue that Mr. Stagnitti could be qualified as an expert witness.  Instead, they argue that his testimony is relevant and persuasive because he has "personal knowledge of the color, smell, texture, and taste of both pure bovine colostrum and whey protein concentrate." (ECF. No. 48-1 at ¶ 10.)  According to Mr. Stagnitti, Plaintiffs obtained samples of Defendant's products and, to him, they look, smell, feel, and taste more like whey protein concentrate than pure bovine colostrum powder.  Mr. Stagnitti further states that the samples were tested in Plaintiffs' lab with a variety of methods, including high-pressure liquid chromatography, radial immunodiffusion, ether extraction, total kjehdahl nitrogen, and FTIR infrared spectroscopy.  (*Id.* at ¶¶ 8, 9.)  Sparing the details and specific results of these testing methods, Mr. Stagnitti asserts that they revealed Defendant's products had profiles inconsistent with pure bovine colostrum.  The Court finds that Mr. Stagnitti's declarations are insufficient to establish a likelihood that Plaintiffs will prevail on the merits in this case.

Mr. Stagnitti's declarations say nothing about how or when Plaintiffs obtained the samples they tested, their chain of custody, or how they were stored.  Nor do they connect any specific product tested to any specific claim by Defendant as to its purity.  With Mr. Stagnitti's initial declaration, Plaintiffs submitted a document referring to Colostrum standard 2060 and Colostrum instant 2060 (ECF No. 24-1 at 8), but the declaration itself does not mention a specific product.  With Mr. Stagnitti's supplemental declaration, Plaintiffs submitted documents referring to ColostruMune 2070, Colostrum Powder 2070, Colostrum Powder 3070, and ColostruMune 2570 (ECF Nos. 48-2, 48-3, 48-4, 48-5, 48-7).  Only one of them, "Ingredient

7

Declaration for Colostrum Powder 3070" (ECF No. 48-5), contains an obvious representation about the percentage of bovine colostrum in Defendant's various products, and it is not clear to whom this representation was made. In short, Plaintiffs fail to explain how the testing they performed shows that these documents are false.

Further, according to Mr. Stagnitti, there is "natural variability in the composition of colostrum," "pure colostrum powder varies from lot to lot," and "there is no standard of identity for bovine colostrum powder." (ECF No. 24-1 at ¶¶ 13, 14.) Notwithstanding Mr. Stagnitti's personal familiarity with colostrum and whey products, his own assessments of the products of a direct competitor for litigation purposes are not conclusive. He is certainly not an impartial referee. Nor does he have expert qualifications. Mr. Stanitti could simply be mistaken in his lay assessment—the differences he perceived could be attributable to natural variability in the composition of colostrum or perhaps differences in the manufacturing process. Under the circumstances, the Court gives minimal weight to Mr. Stanitti's declarations.

Plaintiffs' in-house testing of these products is likewise unavailing. In its sur-reply, Defendant calls Plaintiffs' test results unreliable and specifically argues and explains that one of their testing methods—FTIR—is not an accurate means of testing colostrum. (ECF No. 66 at 3.) The Court need not wade too deeply into this argument at this stage. Rather, the Court finds that the current record is insufficient for Plaintiffs to establish a substantial likelihood of success on the merits of their case.

Plaintiffs have also not shown that in the absence of injunctive relief they face irreparable harm that is "certain, great, [or] actual," as opposed to theoretical. *Heideman*, 348 F.3d at 1189. Plaintiffs contend they will suffer because the nascent market for bovine colostrum will be

harmed if customers are deceived about its benefits. But this alleged harm is based on speculation. Plaintiffs have not shown that Defendant's sales of its products have caused any actual customers to be misled about the benefits of bovine colostrum. The theoretical harm posed by the remote potential of a smaller market for bovine colostrum is insufficient to establish the type of irreparable harm that would give Plaintiffs a clear and unequivocal right to injunctive relief.

Although Plaintiffs have requested, in the alternative, an evidentiary hearing, the Court declines that request at this time. Discovery has been proceeding in this case, and a special master has been appointed. As a practical matter, and in the interest of preserving judicial resources, the Court finds that at this point, the better course is for the case to proceed on the merits. The Court finds that neither of the remaining injunction factors tilts heavily in favor of either party.

### C.      Motion to Restrict

Defendant has filed an unopposed motion to restrict (ECF No. 85), seeking a level 1 restriction on access to Exhibit A to its sur-reply in opposition to the motion for a preliminary injunction. In light of Defendant's interest in protecting its proprietary and sensitive information, the Court grants the motion.

### IV.     CONCLUSION

Therefore, the Court:

(1)     ACCEPTS and ADOPTS the recommendation (ECF No. 95),

(2)     DENIES the motion to dismiss (ECF No. 14),

(3)     DENIES AS MOOT the motion for leave to file a sur-reply (ECF No. 69),

(4) DENIES the motion for a preliminary injunction (ECF No. 24),

(5) DENIES the motion to strike (ECF No. 103), and

(6) GRANTS the motion to restrict (ECF No. 85).

DATED this 9th day of September, 2020.

                                            BY THE COURT:

                                            _____

                                            RAYMOND P. MOORE
                                            United States District Judge